**Cam F. DOWELL, Jr., and Evelyn Dowell**
v.
**UNITED STATES of America**
**(two cases).**

**HILLCREST STATE BANK**
v.
**UNITED STATES of America**
**(two cases).**
Nos. CA3–3521–C, CA3–3522–C, CA3–5474–C and CA3–5475–C.

United States District Court,
N. D. Texas,
Dallas Division.
Jan. 30, 1974.

■

---

Ethan B. Stroud, Robert W. Ryan, Jr., L. Vance Stanton, Richard D. Pullman, Stroud & Smith, Dallas, Tex., for plaintiffs.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Charles G. Barnett and William W. Guild, Tax Div., Dept. of Justice, for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Hillcrest State Bank of Dallas, Texas, and its president since 1956, Cam F.

Dowell, Jr.,[1] sued the United States for the refund of some $54,000.00 in federal income taxes.[2]

The key question in these consolidated cases, which were tried before the Court, is whether the Internal Revenue Service correctly disallowed most of the taxpayers' claimed deductions for the costs of Dowell's travel and his meals with customers and prospective customers of the bank, as well as bank directors and government officials. Additionally, Dowell deducted as business expenses some of his travel costs and other costs connected with his business interests in Greenville, Texas.

The defendant maintains, in a nutshell, that the expenses were not substantiated as required by § 274(d) of the Internal Revenue Code and regulations promulgated thereunder.[3] The plaintiffs insist that the deductions were wholly proper.

I find that, with certain exceptions discussed below, the deductions were for ordinary and necessary business expenses and where satisfactorily substantiated; the taxpayers will be allowed to recover refunds.

1. In CA 3–3521 and CA 3–5474, Dowell and his wife Evelyn Dowell are the plaintiffs, since they filed joint returns. Hereafter, "Dowell" will refer to both Mr. and Mrs. Dowell.

2. Dowell is suing for a total of $31,861.44, including interest. In CA 3–3322 and CA 3–5475, Hillcrest State Bank (hereafter "Hillcrest" or "the bank") is suing for a total of $21,655.15 including interest. All suits allege that the taxes in question were erroneously, illegally and wrongfully assessed and collected. Years in question are 1964 through 1967. Plaintiffs timely but unsuccessfully filed claims for refund with the IRS. Subsequently minor amounts were conceded by stipulation.

3. All statutory references are to the Internal Revenue Code of 1954, Title 26 United States Code, unless otherwise noted. The section in question reads in pertinent part:

(d) Substantiation required.—No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

I.

## DOWELL'S ENTERTAINMENT EXPENSES

Section 274 permits a taxpayer to deduct the cost of business-related entertainment, such as luncheons and dinners, provided there is substantiation "by adequate records or by sufficient evidence corroborating his own statement" of (1) amount, (2) time and place, and (3) business purpose of the expense and (4) the business relationship of the taxpayer and the guest. Additionally, the cost of dues of entertainment facilities, such as private clubs, may be deducted if the club is used principally for furthering the taxpayer's business and the expenditures are directly related to the active conduct of the business.

In this case there is no question as to the amount, time and place of Dowell's entertainment. A virtual blizzard of bills, chits and other papers relating to Dowell's meals with other persons was admitted into evidence. They clearly show the place, date and total amount charged. The missing elements, then, are the business purpose and business relationship. Although these are

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts,

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. *See* also 26 C.F.R. § 1.274–5 generally.

not always shown by Dowell's records, I find them unmistakably supplied by the testimony of numerous witnesses, satisfying the requirement in § 274 of substantiation "by sufficient evidence corroborating [the taxpayer's] own statement." [4]

Among the stacks of papers in evidence is a sheet from a memo pad with a sketch of the Hillcrest State Bank building and the slogan, "That's my bank." As far as Dowell is concerned, truer words were never spoken. Dowell is more than a banker: he is a flesh and blood extension of Hillcrest State Bank. From the evidence in this case, he devoted practically every waking moment of every weekday, and frequent weekends, to his bank. The bank was Dowell's sole avocation. Indeed, during the years in question, Hillcrest (which is a relatively small bank in a commercial city of giant banks) grew and prospered. Deposits climbed from about $27 million to some $34 million, an increase of approximately $7 million or about 25 percent. The bank's income likewise increased during the same period. The Court is in full accord with the assessment of a deponent in this case, Donald Zale, president of the Zale Corporation and a Hillcrest director:

Q. Would you state that the reason that the income of the Hillcrest State Bank increased was due to the efforts of Cam Dowell?

A. I would say that probably ninety-nine percent of it was due to his effort. . . . I think that any or-

ganization is the length, breadth and shadow of one man.

Q. And in this case you would say that shadow was Mr. Dowell's shadow?

A. That's correct.

It quickly became obvious at the trial that Dowell's favorite tool for cultivating new accounts for the bank was entertaining guests at lunch or dinner. These meetings were virtually an everyday occurrence, and almost always took place in a members-only luncheon club. It should be remembered that during the years in question, Texas law permitted alcoholic beverages (other than beer and wine) to be served only in private clubs, and Dowell or the bank belonged to many of Dallas' leading clubs. Testimony from witnesses clearly showed, and I find, that this was unquestionably an ordinary and necessary business practice. An officer of a competing bank, Estes A. Chancellor, explained the matter quite plainly:

Q. What about the bank officers as a whole, what was the frequency that someone from the bank would be taking someone to lunch, frequency-wise?

A. . . . . I would think that at least one or more officers would be having somebody out to lunch one or more times a week. . . . All of our officers make calls on business development work, and if we are going to solicit a commercial account, it's quite likely that we would try to make

---

4. Similarly, Treasury Regulations, 26 C.F.R. § 1.274–5(b)(3)(v), suggest that business relationship need not be shown in black and white, but rather may be established by "occupation *or other information* relating to the person or persons entertained including name, title *or other designation* sufficient to establish business relationship to the taxpayer" [emphasis added]. Further, § 1.274–5(c)(3), as amended after the trial of this case, provides as follows:

If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect

to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element—

(i) by his own statement, whether written or oral, containing specific information in detail as to such element; and

(ii) by other corroborative evidence sufficient to establish such element.

\* \* \* \* \*

If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence [emphasis added].

an appointment with him to call on him about noontime and take him to lunch, because in the first place, it's free, he has an hour freedom away from his telephone and desk, so we have a better opportunity at luncheon to talk. In fact, to solicit his business, . . . you don't just walk up and say, "Why in the hell don't you move your account here?" You have to talk around it a little better than that.

Unlike a noisy cafeteria or hotel coffee shop, the quiet atmosphere and availability of cocktails at a private club (usually one close to the guest's business) permitted Dowell, as Mr. Chancellor put it, to "talk around" the subject of moving the guest's account to Hillcrest.

Several businessmen who had eaten lunch or dinner with Dowell testified that there was a business purpose and business relationship in the meetings, and that they gracefully allowed Dowell to pick up the check.

Sometimes Dowell would stage larger affairs, such as receptions for banking officials, at greater cost than a simple lunch meeting. None of these appeared lavish or extraordinary; seldom if ever were wives invited and the Court is convinced that these other gatherings also were all business, except for certain gatherings to honor various political officeholders. However, those items have been eliminated from the case by stipulation of the parties.

I find that Hillcrest's directors not only approved of Dowell's conduct, but expected and required it. They knew that little if any business would come Dowell's way if he spent eight hours a day in his office waiting for customers to seek him out. It does not appear that Dowell particularly relished his regimen of business luncheons; in fact, he submitted evidence that on those rare occasions when he did not entertain a guest at lunch, he spent only about thirty-five or forty cents on his own meal.[5]

The taxpayers call the Court's attention to the case of LaForge v. Commissioner of Internal Revenue, 434 F.2d 370 (2d Cir. 1970) and draw analogies to the case in question. The IRS in that suit maintained that Dr. LaForge, a surgeon, improperly deducted from his income tax the amounts he spent buying lunch for residents and interns who assisted him. The taxpayer had no written records to substantiate the amounts spent on his and his guests' lunches; instead he simply deducted a flat amount of $2.00 for each day he had lunch in the hospital cafeteria. His witness, the cafeteria cashier, testified that the doctor regularly spent from $2.65 to $3.00 on his and his guests' lunches. The IRS urged the court to disallow the deduction for noncompliance with the substantiation requirements of § 1.274–5(c)(3) of Treasury Regulations (Title 26 C.F.R.)[6] even though it admitted the taxpayer had complied with the statutory requirement (see note 3 supra).

The Second Circuit, acknowledging that Congress had tightened the substantiation requirements because of past notorious abuses of the deductibility of business entertainment, held that the regulation's requirement of a written statement impermissibly went beyond the statutory requirement of substantiation by "sufficient evidence corroborating his own statement." The court found the cashier's oral substantiation of the doctor's deductions perfectly ade-

---

5. At this rate, Dowell could be expected to spend about $100.00 annually for his own meals. In keeping with the holding in LaForge v. Commissioner of Internal Revenue, discussed in the text, Dowell should be charged with receiving ordinary income in the form of additional compensation of $100.00 paid for his meals by Hillcrest during each of the years in question.

6. Before the amendment, the regulations provided that in the absence of "adequate records" the taxpayer must substantiate a deduction by "his own statement in writing" and by other corroborating evidence. The amendment changed the words "in writing" to "whether written or oral".

quate substantiation. Similarly, I find the witnesses' testimony as to business purpose and business relationship with Dowell quite satisfactory and conclusive. The IRS has indicated its agreement with the correctness of the *LaForge* decision by not petitioning for certiorari and by amending the regulation in question (*see* note 4 *supra*). Moreover, it appears that Congress contemplated that oral evidence might sometimes be sufficient corroboration of business purpose and business relationship. The Senate Report on the Revenue Act of 1962 makes it clear that § 274(d) was intended to overrule legislatively the courts' so-called Cohan rule, which took its name from the case of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2d Cir. 1930) and which permitted a taxpayer who could prove a business expense but not its exact amount to deduct an approximate sum. The report continues:

> The requirement that the taxpayer's statements be corroborated will insure that no deduction is allowed solely on the basis of his own unsupported, self-serving testimony. However, the degree of corroboration required to support a claimed deduction will vary as respects the business relationship and purpose, the time and place, and the amount of the expense. Thus, *oral testimony of the taxpayer together with circumstantial evidence available may be considered "sufficient evidence" for the purpose of establishing the business purpose* required under the new provision. However, oral testimony of the taxpayer plus more specific evidence would be required to be "sufficient evidence" as to the amount of an expense. 1962 U.S.Code Cong. & Admin.News, pp. 3297, 3337–3338 (emphasis added).

Among all the chits, tabs, bills and other documentation of Dowell's entertainment of clients are a few unexplained items. For one thing, Mrs. Dowell's signature appears on some charge slips for very small amounts. Similarly, there is a charge for a handball game which Dowell failed to explain, admitting on cross-examination that he never held a handball. In the Court's opinion, these discrepancies are *de minimis,* amounting to less than one dollar each, but since technically they were improperly deducted the attorneys may, if the government insists, make adjustments for them when drawing the judgment.

To summarize the foregoing, the case of LaForge v. Commissioner of Internal Revenue, *supra,* is controlling as to plaintiffs' entertainment deductions. Plaintiffs have met their burden of proof by furnishing oral testimony and circumstantial evidence to corroborate written evidence and Dowell's own statement concerning the amount, time and place, business purpose and business relationship of the contested entertainment deductions.

## II.

### DOWELL'S BUSINESS-RELATED TRAVEL

Dowell traveled a great deal in connection with his businesses. For convenience of discussion, I will mention in order his short-range travel from the bank to downtown Dallas, medium-range travel between Dallas and Greenville, and long-range travel to various destinations.

■ A. *Short-range travel.* Hillcrest State Bank is in University Park, an island suburb of Dallas, several miles north of the central business district. There are no dining facilities at the bank. Consequently, when Dowell had lunch with his guests, it was necessary for him to drive downtown or elsewhere in the city. Additionally, he often visited one of the large downtown banks. In lieu of reimbursing Dowell for his out-of-pocket expenses for fuel, parking, taxi fare, tips, etc., the bank paid Dowell a monthly travel allowance of $75.00. The IRS disallowed the bank's deduction of this amount, challenging whether they were ordinary and necessary business expenses and whether they were properly substantiated. Additionally, the IRS determined that the

monthly allowance was ordinary income to Dowell. (The service took the same position with respect to another $75.00 monthly allowance paid to Dowell for "dues, subscriptions and entertainment.") Each month Hillcrest's board of directors approved the payments to Dowell. It follows that, having found Dowell's business lunches ordinary and necessary, I also find that his short-range travel within Dallas also was ordinary and necessary in the course of his business. He did not keep a record of every dime inserted into parking meters, it is true, but substantiation of such expenses is impractical and, I believe, not required. *See* 26 C.F.R. § 1.274–5(c)(2) and (3).

■ B. *Medium-range travel.* In and near Greenville, Texas, about fifty miles from Dallas, Dowell maintained a farm and an insurance, loan and real estate business. He also was chairman of the board of a Greenville bank. Because of his Greenville interests, Dowell employed an accountant as his Greenville office manager and conferred with him daily by telephone. Dowell also personally drove to Greenville at least weekly, and sometimes more frequently. Sometimes he was accompanied by Mrs. Dowell, a registered insurance solicitor. Dowell deducted automobile expenses of $7,071.18 for trips to Greenville to tend to business and to his farm. The government adjusted this deduction downward, leaving $4,669.21 in dispute, claiming a lack of substantiation that the expenses were incurred for business purposes. In keeping with my previous remarks that Dowell was strictly business, bolstered by testimony from Dowell's Greenville manager that Dowell came there only on business, I find that the deductions were proper, with one exception. Any gasoline charge slips signed by Dowell's sons, as the government claims, should be excluded for lack of showing of a business purpose.

■ C. *Long-range travel.* The only "vacations" that Dowell ever took,

according to the evidence (and in consonance with what we already have learned about the man) were trips to business meetings such as annual conventions of the American Bankers Association. He sometimes made other trips to inspect property he was considering buying. Still other journeys were for the purpose of visiting state and federal banking officials in Austin and Washington. Again I believe the evidence shows that when Dowell traveled, whether on behalf of the bank or his other business interests, the travel was ordinary and necessary and directly related to the conduct of plaintiffs' business; the deductions were correct.

### III.

### OTHER CONTESTED DEDUCTIONS

■ Although the parties commendably compromised a number of items, a few remained contested at the time of trial.

A. Dowell sold some shares of stock of two banks, and the IRS challenged the basis of the stock.

B. The IRS disallowed part of Dowell's deduction for bad debts on his 1966 return, since the loss was incurred on the sale of his personal automobile.

C. On his 1967 return, Dowell deducted $5,000.00 as an ordinary loss resulting from the alleged worthlessness of a motel franchise.

Dowell failed at the trial to produce any evidence about any of the foregoing transactions; thus, in each case the government's position will be taken as correct.

This opinion is filed in lieu of formal findings of fact and conclusions of law.

The attorneys for both sides are requested to submit a proposed form of judgment for the Court's consideration. In the event counsel are unable to agree, they shall notify the Court.