HORACE F. HATCH and VIOLA M. HATCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hatch v. Commissioner
Docket No. 1501-77.
United States Tax Court
T.C. Memo 1980-110; 1980 Tax Ct. Memo LEXIS 473; 40 T.C.M. (CCH) 110; T.C.M. (RIA) 80110; April 10, 1980, Filed John M. Smith, for the petitioners. [1]
W. John Howard, for the respondent. *474 GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax and additions to the tax of petitioners as follows: Additions to the Tax Taxable Year
Deficiencies In Tax
Under Sec. 6653(a),
IRC 1954 [2]
1971
$ 43,678.41
$0
1972
18,002.26
1,410.14
1973
117,750.10
6,016.39
1974
350.18
17.51
Due to concessions, four issues remain for our decision: 1. Whether petitioners understated their income for the taxable years 1973 and 1974 in the respective amounts of $34,733.46 and $4,023.69; 2. Whether petitioners are entitled to deduct as business expenses amounts expended for gifts during the taxable years 1973 and 1974; 3. Whether petitioners are entitled to deduct amounts as travel expenses for the taxable years 1973 and 1974 in excess of the amounts allowed by respondent; and, 4. Whether petitioners are liable for additions to the tax for the taxable years 1972, 1973 and 1974 pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The *475 stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Horace F. Hatch (hereinafter petitioner) and Viola M. Hatch, husband and wife, filed their joint Federal income tax returns for 1971, 1972, 1973 and 1974 with the Internal Revenue Service Center, Austin, Texas. [3] Petitioners resided in Longview when they filed their petition in this proceeding. During the taxable years in issue, petitioner operated the East Texas Fire Protection Company (hereinafter the Company) in Longview as sole proprietor. The business of the Company throughout the years in issue was the installation of fire protection systems in buildings. Petitioner employed crews of workmen to carry out those installations. 1. Unreported Income
For the taxable years in issue, petitioners maintained a safe deposit box at Longview National Bank, and both petitioners had access to the box. Petitioners kept large sums of cash, perhaps as much as $60,000, in their safe deposit box. Petitioner entered the box on the following dates in 1973 and 1974: 1973
1974
January 3
March 12
January 8
March 26
January 26
April 11
March 9
May 17
March 21
July 19 (twice)
March 30
November 26
April 4
April 11
April 20
April 27
June 1
June 7
July 30
October 19
November 15
November 28
December 5
*476 Petitioner's wife entered the box only once during 1973 and 1974, that being on February 26, 1974. In addition to the safe deposit box described above, separate bank accounts were maintained at the Longview National Bank in the following names: (1) H. F. Hatch; (2) Mrs. H. F. Hatch; and (3) East Texas Fire Protection Co. The accounts for petitioner and his wife were personal checking accounts; the account for petitioner's proprietorship was a business checking account. The bank accounts discussed herein are those described above, unless otherwise noted. Petitioner habitually overdrew his bank account. Most of the deposits to his account which are listed below were made ostensibly to cover overdrafts or to anticipate potential overdrafts. Longview National Bank apparently recognized both petitioner's propensity to overdraw his account and his ability to cover those overdrafts immediately, because the bank regularly honored petitioner's overdrafts. During 1973, the following deposits were among those made by petitioner to his account: Date of
Nature
Amount Deposit
of Deposit
of Deposit
April 20, 1973
Currency
$ 2,500
July 2, 1973
Currency
2,500
July 16, 1973
Currency
700
September 10, 1973
Currency
2,900
November 28, 1973
Currency
10,000
TOTAL
$18,600
*477 Petitioners reported no taxable income attributable to any of the foregoing deposits. On April 20, 1973, prior to any deposits, petitioner's account had an overdraft balance of $639.69. Not only did petitioner deposit $2,500 in currency to his account on April 20, 1973, but also he entered the safe deposit box on that same day. On April 24, 1973, the bank cleared a check of petitioner's which was written for $3,000 and a check for $160, leaving an overdraft balance of $1,299.69 in his account. On July 2, 1973, prior to the deposit of $2,500 to petitioner's account, that account had a balance of $53.81. Petitioner deposited $2,500 in currency to the account on that day, and on July 9, 1973, the bank cleared a check of petitioner's which was written for $2,500. That check was dated July 1, 1973, and was payable to "cash." It was endorsed for deposit only by the Dunes Hotel and Country Club, M & R Investment Co., payable to the order of the Valley Bank of Nevada, Las Vegas, Nevada. On September 5, 1973, petitioner cashed a check for $1,500 at the Longview National Bank. That check cleared the bank on September 6, 1973. On September 9, 1973, petitioner wrote a check payable *478 to M & R Investment in the amount of $2,000. That check was endorsed for deposit only by the Dunes Hotel and Country Club, M & R Investment Co., payable to the order of the Valley Bank of Nevada, Las Vegas, Nevada. On September 10, 1973, petitioner deposited $2,900 in currency to his account. On November 28, 1973, prior to any deposits, petitioner's account had an overdraft balance of $9,283.84. On November 28, 1973, petitioner entered the safe deposit box, and he also made a deposit of $10,000 in currency to his account. After that deposit, the balance in petitioner's account was $716.16. On June 7, 1973, a deposit of $15,000 in currency was made to the account of East Texas Fire Protection Co. On that same date, petitioner entered the safe deposit box. Petitioners reported no taxable income attributable to the currency deposit. Among the other deposits to the account of East Texas Fire Protection Co. for 1973 were amounts totaling $1,133.46 which were not reported by petitioners as taxable income for that year. During 1974, the following deposits were among those made by petitioner to his account: Date of Deposit
Nature of Deposit
Amount of Deposit
March 8, 1974
Currency
$2,000
October 2, 1974
Currency
1,000
TOTAL
$3,000
*479 In the same year, the following deposits were among those made by petitioner's wife to her account: Date of Deposit
Nature of Deposit
Amount of Deposit
September 16, 1974
Currency
$ 300.00
October 2, 1974
Check
515.57
December 16, 1974
Check
208.12
TOTAL
$1,023.69
None of the foregoing amounts were reported by petitioners as income for the taxable year 1974. On February 26, 1974, petitioner's wife entered the safe deposit box. On that same day, a deposit of $8,000 was made to petitioner's account. Two days earlier, on February 24, 1974, petitioner wrote a check payable to "cash" in the amount of $6,500. That check was endorsed by Riverboat Casino, Inc. dba Holiday Casino, for deposit only at the Valley Bank of Nevada, Las Vegas, Nevada. It cleared the Longview National Bank on March 1, 1974, and left petitioner's account with an overdraft balance of $565.80. On March 8, 1974, petitioner deposited $2,000 in currency to his account, remedying the overdraft. As is indicated by certain of the foregoing facts, petitioner is a gambler and frequents Las Vegas. Petitioner kept no records of his gambling winnings or losses. Petitioner sometimes *480 deposited the money that he brought back from Las Vegas in his account or safe deposit box, but did not always do so. Petitioner customarily carried large sums of cash on his person, often as much as $10,000 to $20,000. Petitioner used that money for travel expenses and at least on one occasion for gambling outside of Las Vegas. Petitioner's withdrawals from his business in 1973, $34,500, were redeposited to his personal account in transactions which are not in issue here. No part of those funds was available for the deposits here in issue. A similar analysis for 1972 also shows that no part of the deposits in issue here could have derived from petitioner's withdrawals from the Company in 1972. In 1972, petitioner sold his interest in Firematic Sprinkler Devices, Inc. The first installment was made by check dated August 4, 1972, and drawn on the account of a Massachusetts law firm. On August 7, 1972, petitioner cashed the check, which was in the amount of $24,925. Petitioner then entered the safe deposit box and placed the proceeds of the check therein. 2. Gifts
Petitioner purchased the following items in 1973 to be given as business gifts: ITEMS
PAYEE
AMOUNT
24 ladies' billfolds
Kennedy's
$ 239.40
Liquor
Harley's Cut Rate
945.03
Liquor
Harley's Cut Rate
931.18
Liquor
Harley's Cut Rate
99.86
Fruits, Nuts, Turkeys
Ben E. Keith Company
1,644.48
24 wallets
Kennedy's
498.96
16 hams
Sadler's Sales, Inc.
343.60
Ham & Cheese, candy
Harvey's Candy and Gift Shop
125.21
Cheese, candy
Harvey's Candy and Gift Shop
109.00
*481 Petitioner purchased the following items in 1974 to be given as business gifts: ITEMS
PAYEE
AMOUNT
Hams
Sadler's Sales, Inc.
$341.80
All of the foregoing amounts were paid by checks drawn on the checking account of the Company. 3. Travel Expenses
Petitioners claimed deductions for travel expenses on their Federal income tax returns for 1973 and 1974. In each year, their deductions were made up of two categories: (1) amounts that were paid by check and posted monthly to the general ledger (the first category); and (2) amounts that were allegedly paid in cash, supported by entries in petitioner's diaries, and posted as a lump sum to the general ledger at the end of the taxable year (the second category). The following is a list of expenditures that are included in the first category for 1973: Date Paid
Date Incurred
Payee
Location
Amount
1/25/73
1/16/73
American Express Company
$ 15.00
1/25/73
12/16/72
Rodeway Inn of Bryan
Bryan
10.30
1/25/73
12/27/72
El Chico Cafe
Longview
11.93
3/21/73
2/17/73
Drummers Inn
Beeville
196.89
3/21/73
2/19/73
Drummers Inn
Beeville
30.90
3/21/73
1/25/73
Eastex Aviation, Inc.
Longview
194.83
3/21/73
2/10/73
Eastex Aviation, Inc.
Longview
189.52
4/9/73
3/2/73
Delta Airlines, Inc.
Dallas
138.02
5/16/73
5/10/73
Eastex Aviation, Inc.
Longview
112.40
6/19/73
5/31/73
Eastex Aviation, Inc.
Longview
107.80
7/24/73
6/8/73
Holiday Inn
Houston
18.02
7/24/73
6/11/73
Fountain Terrace Motel
Palacios
99.26
8/20/73
7/14/73
Kings Quarters Inn
Mexia
43.79
8/20/73
7/18/73
Brennan's French Restaurant
Dallas
16.70
8/21/73
7/26/73
Gregg Aviation, Inc.
Longview
340.80
8/23/73
7/21/73
Eastex Aviation, Inc.
Longview
112.40
$1,638.56
*482 The following is a list of expenditures that are included in the first category for 1974: Date Paid
Date Incurred
Payee
1/25/74
1/17/74
American Express Company
1/25/74
12/16/73
johnny Cace, Inc.
1/25/74
12/24/73
Johnny Cace, Inc.
2/28/74
1/20/74
Johnny Cace, Inc.
3/20/74
2/17/74
Eastex Aviation, Inc.
3/20/74
2/19/74
Eastex Aviation, Inc.
3/26/74
Hertz Rent-A-Car
4/24/74
3/4/74
Eastex Aviation, Inc.
4/24/74
3/5/74
Eastex Aviation, Inc.
4/24/74
3/31/74
Eastex Aviation, Inc.
4/24/74
3/18/74
Mardi Gras Motel
5/15/74
4/17/74
Eastex Aviation, Inc.
6/12/74
5/9/74
Eastex Aviation, Inc.
6/12/74
5/21/74
Eastex Aviation, Inc.
6/12/74
5/21/74
Hertz Corporation
7/1/74
Tasty World
7/1/74
Tasty World
7/1/74
5/5/74
Days Inn of America
7/8/74
5/10/74
Texas International Airlines
7/8/74
5/10/74
Texas International Airlines
8/19/74
7/7/74
Eastex Aviation, Inc.
8/19/74
7/29/74
Eastex Aviation, Inc.
11/18/74
10/8/74
Eastex Aviation, Inc.
12/10/74
10/12/74
Ramada Inn
12/10/74
10/15/74
Ramada Inn
12/10/74
10/15/74
Ramada Inn
12/10/74
11/5/74
Eastex Aviation, Inc. Date Paid
Location
Amount
1/25/74
$ 15.00
1/25/74
Longview
22.42
1/25/74
Longview
25.10
2/28/74
Longview
16.91
3/20/74
Longview
286.70
3/20/74
Long view
120.14
3/26/74
Waco
130.69
4/24/74
Longview
337.34
4/24/74
Longview
118.80
4/24/74
Longview
155.81
4/24/74 Waco
150.96
5/15/74
Longview
72.24
6/12/74
Longview
91.74
6/12/74
Longview
175.70
6/12/74
Beaumont
30.78
7/1/ 74
24.88
7/1/74
12.73
7/1/74
38.16
7/8/74
Dallas
96.55
7/8/74
Midland-Odessa
96.55
8/19/74
Longview
147.96
8/19/74
Longview
108.50
11/18/74
Longview
113.29
12/10/74
Fort Worth
37.03
12/10/74
10/15/74
Ramada Inn
Fort Worth
135.13
12/10/74
Fort Worth
17.85
12/10/74
Longview
115.68
$2,694.64
*483 Many jobs that the Company bid on and worked on were outside of the Longview area. Petitioner spent many days outside of the Longview area tending to that business. Petitioner often flew to job sites, usually using a chartered airplane and pilot to fly him from Longview to the job site. Many of the above expenditures were for air fares. The destinations of some of those flights are known but some are not. DESTINATION
DATE OF FLIGHT
Unknown
1/25/73
Unknown
2/10/73
El Paso
3/2/73
Unknown
5/10/73
Unknown
5/31/73
Unknown
7/26/73
Unknown
7/21/73
Katy 2/17/74
Orange
2/19/74
Unknown
3/4/74
Unknown
3/5/74
Unknown
3/31/74
Dallas
4/17/74
Houston
5/9/74
Beaumont
5/21/74
Midland-Odessa
5/10/74
Dallas
5/10/74
Cleburne
7/7/74
Unknown
7/29/74
Unknown
10/8/74
Mena, Arkansas
11/5/74
There was no business purpose for petitioner's flight to El Paso on March 2, 1973. Petitioner's flight to Katy on February 17, 1974, was made in connection with work done for MacDee, Inc., on the Katy Nursing Home. Petitioner's flight to Orange on February 19, 1974, was made in connection with work done for Firestone Rubber. The flight to Dallas on *484 April 17, 1974, was made in connection with quotes on a sprinkling contract for the House of Antiques. There was no business purpose for the flight to Houston on May 9, 1974. The flight to Beaumont on May 21, 1974, was for quoting on work. The round-trip flights on May 10, 1974, between Dallas and Midland-Odessa were made for petitioner to quote on work. Petitioner's trip to Cleburne on July 7, 1974, was made in connection with work done for MacDee, Inc., on the Cleburne Nursing Home. The flight to Mena, Arkansas, on November 5, 1974, was made in connection with work being done on a nursing home. The date when petitioner rented an auto in Waco from Hertz Rent-A-Car is unknown. The date when petitioner spent $24.88 at Tasty World and the location of Tasty World are unknown. The date when petitioner spent $12.73 at Tasty World and the location of Tasty World are unknown. The location of the Days Inn of America at which petitioner spent $38.16 on May 5, 1974 is unknown. Petitioner's expenditure of $30.78 for a Hertz rental car on May 21, 1974 in Beaumont related to his trip to that city for making quotes on work. Petitioner's expenditure on December 16, 1972 (paid on January 25, 1973), *485 at the Rodeway Inn of Bryan related to work done for MacDee Construction Co. on the Bryan Nursing Home. Petitioner's two expenditures dated February 17 and 19, 1973, at the Drummers Inn in Beeville related to work done for R.W. McDonnell Construction. Petitioner's expenditure on June 11, 1973 at the Fountain Terrace Motel in Palacios related to work done for MacDee Construction Co. Petitioner's expenditure on July 14, 1973 at the Kings Quarters Inn in Mexia related to work done for MacDee Construction Co. in Wortham. Petitioner's expenditure on March 18, 1974 at the Mardi Gras Motel in Waco related to work done for MacDee, Inc., on the Robinson Nursing Home in Robinson. Petitioner's three expenditures on October 12 and 15, 1974 at the Ramada Inn in Fort Worth related to work done for MacDee, Inc., on the Haltom City Nursing Home in Haltom City. There was no business purpose for the expenditure of $18.02 at the Holiday Inn in Houston on June 8, 1973 or for the expenditure of $16.70 at Brennan's French Restaurant in Dallas on July 18, 1973. Petitioner paid for meals consumed by his employees on many occasions during 1973 and 1974. Petitioner also entertained persons who were *486 not his employees. Amounts spent for both of these purposes were aggregated under the heading "entertainment" in petitioner's diaries for 1973 and 1974. There is no way to distinguish the amounts spent for one purpose from amounts spent for the other. Petitioner kept a daily record of his cash expenditures in 1973 and 1974 but kept no contemporaneous record of his whereabouts. For any given day of 1973 and 1974, one can tell how much petitioner spent for various items such as food and entertainment, but one cannot tell whether such amounts were spent while petitioner was away from home or in the vicinity of Longview. In his statutory notice of deficiency, the Commissioner increased petitioners' gross income for 1973 by $34,733.46, explaining that petitioners' bank deposits revealed additional unreported income in that amount. The Commissioner disallowed part of the deduction claimed by petitioners in 1973 for advertising and business promotion expenses. Of the total deduction claimed, $14,930.12, respondent disallowed $3,447.17 of the advertising category and $8,668.25 of the business promotion category, leaving $1,245.33 allowed as a deductible expense for advertising and *487 $1,569.37 allowed as a deductible expense for entertainment. The Commissioner explained that no amount in excess of that allowed as a deduction had been shown to be an ordinary and necessary business expense of petitioners or to have been expended for the purpose of advertising, business promotion, or entertainment. The Commissioner also disallowed part of the deduction claimed by petitioners in 1973 for travel expenses. Petitioners claimed such a deduction in the amount of $21,027.99; the Commissioner disallowed $20,592.84 of the deduction, explaining that no amount in excess of $435.15 had been shown to be an ordinary and necessary business expense of petitioners or to have been expended for travel. In his statutory notice of deficiency, the Commissioner increased petitioners' gross income for 1974 by $10,117.04, explaining that petitioners' bank deposits revealed additional unreported income in that amount. [4] The Commissioner determined that petitioners improperly included $341.80 paid to Sadler's Bar-B-Que Sales, Inc., in their calculation of cost of goods sold for 1974, and accordingly he decreased petitioners' adjustment for cost of goods sold. The Commissioner disallowed *488 part of the deduction claimed by petitioners in 1974 for travel expenses. Petitioners claimed such a deduction in the amount of $31,790.75; the Commissioner disallowed $31,244.75 of the deduction, explaining that no amount in excess of $546 had been shown to be an ordinary and necessary business expense of petitioners or to have been expended for travel. The Commissioner also determined that part of petitioners' underpayment of tax for each of the taxable years 1972, 1973 and 1974, was due to negligence or intentional disregard of rules and regulations, and therefore he imposed on petitioners for the taxable years 1972, 1973 and 1974, the five percent addition to the tax provided by section 6653(a). OPINION 1. Unreported Income
The first issue for our decision is whether petitioners realized income of $34,733.46 and $4,023.69 during the taxable years 1973 and 1974 which they failed to report. Respondent *489 determined that petitioners had unexplained bank deposits of $34,733.46 and $4,023.69 during the taxable years 1973 and 1974 and that such amounts constituted taxable income to petitioners. Petitioners bear the burden of proving that respondent's determination is incorrect. Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601, 613-614 (1957). Although it is difficult to prove a negative, petitioners must do so to prevail on this issue. That is, they must prove by a preponderance of the evidence that their unexplained bank deposits did not constitute unreported income in the amounts alleged. Bank deposits are prima facie evidence of income. See Boyett v. Commissioner, 204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); *490 Estate of Mason v. Commissioner, supra at 656. To overcome that evidence, petitioners introduced documentary evidence in the form of their bank records, testimony about the existence of large sums of cash in a safe deposit box, and testimony about petitioner's propensity to carry large sums of cash on his person. Petitioners explain the deposits in question as being either transfers of cash from the safe deposit box to the given bank account or redeposits of previously withdrawn funds. Petitioners corroborated the explanation involving the safe deposit box by introducing the records of entry to their safe deposit box and correlating those records to dates when bank deposits were made. To back up the redeposit argument and to explain the source of funds in the safe deposit box, petitioners submitted a table that listed the amounts of petitioner's withdrawals from the Company for the years 1966 through 1974, and submitted evidence that petitioner received and cashed a check in the amount of $24,925 as proceeds of a sale. Respondent's rejoinder to these explanations has two facets: (1) unrefuted proof that none of the alleged redeposits could have come from withdrawals *491 from the Company in 1972 or 1973; and (2) proof through petitioner's own testimony that he was a gambler who frequently traveled to Las Vegas, who used his safe deposit box in connection with his gambling activities, who kept no records of gambling winnings or losses, and who reported no winnings from gambling on Federal income tax returns. We believe that petitioner regularly carried large sums of cash and that the safe deposit box contained a large quantity of cash. In our findings of fact, we have noted correlations between deposits to petitioners' accounts and entry into the safe deposit box. Petitioners have proved that certain deposits of cash to the bank accounts were of cash take from petitioners' safe deposit box. Specifically, we believe that the deposit of $2,500 to petitioner's account on April 20, 1973, came from the safe deposit box; that the deposit of $15,000 to the account of the Company on June 7, 1973, came from the safe deposit box; that the deposit of $10,000 to petitioner's account on November 28, 1973, came from the safe deposit box; and that the deposit of $2,000 to petitioner's account on March 8, 1974, came originally from the safe deposit box. Petitioners *492 therefore have proved that four of the deposits in question were deposits of currency taken from their safe deposit box. Petitioners contend that the money kept in their safe deposit box is an accumulation of funds withdrawn from the Company between 1966 and 1974 and of cash received from a sale of stock. Petitioner received a check drawn upon the account of a Massachusetts law firm as the first installment on the sale of his interest in Firematic Sprinkler Devices, Inc. The check was dated August 4, 1972 and was drawn for $24,925. Petitioner cashed the check on August 7, 1972. Petitioner testified that he placed the proceeds of that check in the safe deposit box. His testimony is corroborated by the record of access to the safe deposit box, which shows that the box was entered by petitioner at 1:10 p.m. on August 7, 1972, and that he left five minutes later. On the strength of this evidence, petitioners have proved that $24,925 of the four deposits described above does not constitute taxable income to petitioners. The remaining $4,575, however, must be included by petitioners in income because it has not been shown to be from nontaxable sources. Petitioners have failed *493 to prove that any of the funds in their safe deposit box came from petitioner's withdrawals from the Company. The testimony of petitioner was vague. He never identified the years in which the alleged deposits to the safe deposit box occurred nor the amounts of those alleged deposits. Respondent introduced proof that none of petitioner's drawings for 1972 or 1973 were available for deposit to the safe deposit box. Petitioners did not rebut that proof. Moreover, some of the cash in petitioner's safe deposit box could have come from gambling winnings because petitioner admitted that he sometimes took money from the safe deposit box when going to Las Vegas and put money in when he returned. Aside from general testimony that petitioner was a "big loser" in Las Vegas, no concrete facts have been proved about petitioner's gambling activities and he admittedly kept no records of his winnings and losses. As for the other deposits in issue, which total $9,257.15, petitioners failed to correlate such deposits to dates of entry to their safe deposit box, and therefore we do not believe that such deposits came from amounts kept in the safe deposit box. Nor have petitioners proved that such *494 amounts came from withdrawals from the Company. Petitioners offered only vague testimony to link the deposits under consideration with such withdrawals. As noted in the preceding paragraph, respondent introduced unrefuted evidence that none of petitioner's withdrawals for 1972 and 1973 were available for the deposits here in issue. Based upon the record before us, we must hold that these deposits totaling $9,257.15 have not been proved to be nontaxable, and therefore such deposits must be included in petitioners' income. 2. Gifts
The second issue to be decided is whether petitioners are entitled to deduct as business expenses amounts expended for gifts during 1973 and 1974. Such amounts were classified in various categories on petitioners' Federal income tax returns for those taxable years. On their Federal income tas return for 1973, petitioners claimed a deduction for advertising expenses in the amount of $4,692.50, of which respondent allowed $1,245.33 and disallowed $3,447.17. Of the $3,447.17 that respondent disallowed, petitioners concede that $3,207.77 is not deductible but contend that the remaining $239.40 is deductible as originally claimed. The expenditure *495 that petitioners contend to be deductible was made by the Company for the purchase of 24 ladies' billfolds from Kennedy's. The total price of $239.40 was paid by a check drawn on the account of the Company. Petitioner testified that he purchased the billfolds to be given to receptionists as gifts to facilitate the conduct of his business at the establishments where they worked. On their Federal income tax return for 1973, petitioners claimed a deduction for business promotion expenses in the amount of $10,237.62, of which respondent allowed $1,569.37 and disallowed $8,668.25. Of the $8,668.25 that respondent disallowed, petitioners concede that $3,971.53 is not deductible but contend that the remaining $4,696.72 is deductible. [5] The expenditures that petitioners contend to be deductible are as follows: Harley's Cut Rate
$945.03
Harley's Cut Rate
931.18
Harley's Cut Rate
99.86
$1,976.07
Ben E. Keith Co.
1,644.48
Kennedy's
498.96
Salder's Sales, Inc.
343.60
Harvey's Candy and
Gift Shop
125.21
Harvey's Candy and
Gift Shop
109.00
234.21
$4,697.32
*496 The payments to Harley's Cut Rate were all for the purchase of liquor. The payment to Ben E. Keith Company was for the purchase of fruits, nuts and turkeys. The payment to Kennedy's was for the purchase of 24 wallets. The payment to Sadler's Sales, Inc., was for the purchase of 16 hams. The payments to Harvey's Candy and Figt Shop were for ten five pound boxes of candy, six ham and cheese packages and six cheese packages. To pay the foregoing amounts, checks were drawn on the account of the Company. Petitioner testified that he purchased the items listed above to be given as business gifts. On their Federal income tax return for 1974, petitioners mistakenly included $341.80 paid to Sadler's Bar-B-Que Sales, Inc., in their calculation of cost of goods sold for 1974, and they claim that such amount constitutes a deductible business expense. The payment to Sadler's Bar-B-Que Sales, Inc., was for the purchase of hams. To pay the foregoing amount, a check was drawn of the account of the Company. Petitioner testified that he purchased the hams to be given as business gifts. Expenditures *497 for business gifts may qualify as ordinary and necessary business expenses dedutible under section 162(a), but the deduction of amounts so expended is limited by the provisions of section 274. Section 274(b) sets the maximum amount deductible in respect of gifts to any individual for a given year; section 274(d) sets forth the substantiation required of any taxpayer who claims a deduction on account of an expenditure for business gifts. Thus, for petitioners' expenditures to meet the requirements of section 274, the following must be shown for each gift: (1) the cost of the figt to petitioners; (2) that the cost of the gift, when added to the cost of other gifts given to the same donee during the taxable year, does not exceed $25; (3) the date of the gift; (4) a description of the gift; (5) the business purpose of the gift; and (6) information establishing the business relationship of the donee to petitioner. Sec. 274(b); sec. 1.274-5(b)(5), Income Tax Regs.
Petitioners have not adequately substantiated any of the expenditures for gifts that they now claim. They proved the dates when petitioner purchased the gifts, but they did not prove the dates when *498 petitioner made the gifts. Petitioners offered no list of donees, and it is impossible to determine whether or not any of the donees received gifts in excess of $25 for the taxable years 1973 and 1974. Petitioners' failure of proof in these two regards applied to each gift purchased; therefore, the deductions claimed by petitioners must be disallowed. Section 274 provides rigorous and specific requirements for substantiation. That petitioners failed to comply with two of those requirements is sufficient to disallow the claimed deductions. See Mathews v. Commissioner,61 T.C. 12 (1973), revd. on another issue, 520 F.2d 323 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). Moreover, most of the gifts fail to satisfy other requirements of substantiation in addition to those of date and aggregate gift value per donee. However, since those two factors are sufficient to disqualify the claimed deductions, it is unnecessary to denigrate petitioners' proof any further. 3. Travel Expenses
The third issue to be decided is whether petitioners *499 are entitled to deduct amounts as travel expenses for the taxable years 1973 and 1974 in excess of the amounts allowed by respondent. Petitioners claimed deductions for travel expenses on their tax returns for the taxable years 1973 and 1974 in the respective amounts of $21,027.99 and $31,790.75. Of those amounts, respondent allowed as deductions only $435.15 and $546 respectively. The amount claimed by petitioners in each year is comprised of two components: (1) amounts paid by check and posted monthly to the general ledger; and (2) amounts allegedly paid in cash, supported by entries in petitioner's diary, and posted as a lump sum to the general ledger at the end of the taxable year. Section 162 allows a deduction for travel expenses. Specifically, that section provides as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals *500 and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * * However, prerequisite to the allowance of such a deduction for travel expenses, the rigorous substantiation requirements of section 274 must be met. Section 274 provides in pertinent part as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) SUBSTANTIATION REQUIRED.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from hime), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel * * * (C) the business purpose of the expense * * *. In laymen's terms, a taxpayer who seeks to deduct traveling expenses must prove by his records or by his testimony and records the amount he spent, when he spent it, where he spent it, and how the expenditure related to his business. Thus, section 274(d) *501 sets forth four elements that a taxpayer must prove and sets forth the kind of proof needed to establish those elements. Regulations have been promulgated to explain further the elements and the standards of proof. See secs. 1.274-5(b)(2) and 1.274-5(c), Income Tax Regs. We note that section 274 imposes a rigorous test of deductibility. Each of the foregoing elements must be proved for each separate expenditure. General or vague proof, whether offered by testimony or documentary evidence, will not suffice. Specificity is imperative. See Dowell v. United States, 522 F.2d 708 (5th Cir. 1975), vacating 370 F.Supp. 69 (N.D. Tex. 1974), cert. denied 426 U.S. 920 (1976). Keeping in mind that petitioners bear the burden of proof in this proceeding, Welch v. Helvering, 290 U.S. 111 (1933), we next must examine the claimed travel expenses in light of the foregoing legal principles. a. Amounts Paid by Check
Of the deduction for travel expenses claimed in 1973 $2,671.99 represents amounts that were paid by check and posted monthly to the general ledger. The $435.15 allowed by respondent as a deduction for *502 travel expenses is part of this component of petitioners' claimed deduction. Petitioners concede that $598.28 of this component is not deductible as travel expenses, but they contend that they are entitled to deduct the remaining $1,638.56 as travel expenses for 1973. At trial, petitioners produced canceled checks and receipts to substantiate the amount now claimed. The following is a list of the expenditures that make up the claimed $1,638.56: Date Paid
Date Incurred
Payee
Location
Amount
1/25/73
1/16/73
American Express Company
$ 15.00
1/25/73
12/16/72
Rodeway Inn of Bryan
Bryan
10.30
1/25/73
12/27/72
El Chico Cafe
Longview
11.93
3/21/73
2/17/73
Drummers Inn
Beeville
196.89
3/21/73
2/19/73
Drummers Inn
Beeville
30.90
3/21/73
1/25/73
Eastex Aviation, Inc.
Longview
194.83
3/21/73
2/10/73
Eastex Aviation, Inc.
Longview
189.52
4/9/73
3/2/73
Delta Airlines, Inc.
Dalls
138.02
5/16/73
5/10/73
Eastex Aviation, Inc.
Longview
112.40
6/19/73
5/31/73
Eastex Aviation, Inc.
Longview
107.80
7/24/73
6/8/73
Holiday Inn
Houston
18.02
7/24/73
6/11/73
Fountain Terrace Motel
Palacios
99.26
8/20/73
7/14/73
Kings Quarters Inn
Mexia
43.79
8/20/73
7/18/73
Brennan's French Restaurant
Dallas
16.70
8/21/73
7/26/73
Gregg Aviation, Inc.
Longview
340.80
8/23/73
7/21/73
Eastex Aviation, Inc.
Longview
112.40
$1,638.56
*503 Of the deduction for travel expenses claimed in 1974, $4,470.75 represents amounts paid by check and posted monthly to the general ledger. The $546 allowed by respondent as a deduction for travel expenses is part of this component of petitioners' claimed deduction. Petitioners concede that $1,249.19 of this component is not deductible as travel expenses, but they contend that they are entitled to deduct the remaining $2,675.56 as travel expenses for 1974. At trial, petitioners produced canceled checks and receipts to substantiate the payment of $2,694.64. [6] The following is a list of the expenditures that make up the $2,694.64: Date Paid
Date Incurred
Payee
1/25/74
1/17/74
American Express Company
1/25/74
12/16/73
Johnny Cace, Inc.
1/25/74
12/24/73
Johnny Case, Inc.
2/28/74
1/2/74
Johny Case, Inc.
3/20/74
2/17/74
Eastex Aviation, Inc.
3/20/74
2/19/74
Eastex Aviation, Inc.
3/26/74
Hertz Rent-A-Car
4/24/74
3/4/74
Eastex Aviation, Inc.
4/24/74
3/5/74
Eastex Aviation, Inc.
4/24/74
3/31/74
Eastex Aviation, Inc.
4/24/74
3/18/74
Mardi Gras Motel
5/15/74
4/17/74
Eastex Avaiation, Inc.
6/12/74
5/9/74
Eastex Avaiation, Inc.
6/12/74
5/21/74
Eastex Aviation, Inc.
6/12/74
5/21/74
Hertz Corporation
7/1/74
Tasty World
7/1/74
Tasty World
7/1/74
5/5/74
Days Inn of America
7/8/74
5/10/74
Texas International Airlines
7/8/74
5/10/74
Texas International Airlines
8/19/74
7/7/74
Eastex Aviation, Inc.
8/19/74
7/29/74
Eastex Aviation, Inc.
11/18/74
10/8/74
Eastex Aviation, Inc.
12/10/74
10/12/74
Ramada Inn
12/10/74
10/15/74
Ramada Inn
12/10/74
10/15/74
Ramada Inn
12/10/74
11/5/74
Eastex Aviation, Inc.
*504 Date Paid
Location
Amount
1/25/74
$ 15.00
1/25/74
Longview
22.42
1/25/74
Longview
25.10
2/28/74
Longview
16.91
3/20/74
Longview
286.70
3/20/74
Longview
12 0.14
3/26/74
Waco
130.69
4/24/74
Longview
337.34
4/24/74
Longview
118.80
4/24/74
Longview
155.81
4/24/74
Waco 150.96
5/15/74
Longview
72.24
6/12/74
Longview
91.74
6/12/74
Longview
175.70
6/12/74
Beaumont
30.78
7/1/74
1 2.73
7/1/74
38.16
7/8/74
Dallas
96.55
7/8/74
Midland-Odessa
96.55
8/19/74
Longview
147.96
8/19/74
Longview
108.50
11/18/74
Longview
113.29
12/10/74
Fort Worth
37.03
12/10/74
Fort Worth
135.13
12/10/74
Fort Worth
17.85
12/10/74
Longview
115.68
$2,694.64
At trial, petitioner testified about the foregoing expenditures to the best of his recollection. Also, petitioners submitted a list of jobs undertaken in 1973 and 1974 which were outside the vicinity of Longview. That list contains the name of each customer, a description of each job, the location of each job, the dollar amount charged for each job, and the date and number of each invoice sent by petitioner to his customers. For convenience of discussion, *505 we have grouped the foregoing expenditures for 1973 and 1974 into three categories: (1) expenditures for items other than travel away from home; (2) expenditures for air fares; and (3) expenditures for travel away from home except air fares. We begin our discussion with the first category, expenditures for items other than travel away from home. Petitioner's payments of $15 in 1973 and $15 in 1974 to American Express for his annual cardholder dues are not expenses for travel away from home. They are, however, ordinary and necessary business expenses under section 162 and are deductible without limitation or qualification under section 274. The amount that petitioner expended at the El Chico Cafe in Longview and paid in January 1973 is not deductible because it was not expended while a petitioner was away from home within the meaning of the statute. In addition, this amount is not deductible as an entertainment expense because petitioners failed to prove a business purpose for the expenditure. For the same reasons, the amounts that petitioner expended at Johnny Cace, Inc., in Longview and paid in January and February 1974 are not deductible. We next turn to the second category *506 of expenditures for 1973 and 1974, air fares. The bulk of the expenditures that petitioners seek to deduct were made for transportation by air. For each of those expenditures, petitioners have proved the amount paid and the date of the travel through their submission of receipts and canceled checks. Petitioners' proof of the places of travel, i.e., the destinations of the flights, and the business purposes of the flights is less comprehensive. The receipts for some flights indicate destinations; for the rest of the flights, petitioners attempted to prove destinations by petitioner's testimony and the list of invoices mentioned above. Ticket copies or notations by the carriers on receipts prove the following destinations for the flights indicated: DATE OF FLIGHT
CARRIER
DESTINATION
3/2/73
Delta Airlines
El Paso
4/17/74
Eastex Aviation
Dallas
5/9/74
Eastex Aviation
Houston
5/21/74
Eastex Aviation
Beaumont
5/10/74
Texas International
Midland-Odessa
5/10/74
Texas International
Dallas
7/7/74
Eastex Aviation
Cleburne
11/5/74
Eastex Aviation
Mena, Arkansas
Notations by petitioner or his agent on receipts, petitioner's testimony, and the *507 list of job invoices collaborate to prove the following destinations for the flights indicated: DATE OF FLIGHT
CARRIER
DESTINATION
2/17/74
Eastex Aviation
Katy
2/19/74
Eastex Aviation
Orange
Petitioners failed to prove the destination of the following flights: DATE OF FLIGHT
CARRIER
1/25/73
Eastex Aviation
2/10/73
Eastex Aviation
5/10/73
Eastex Aviation
5/31/73
Eastex Aviation
7/26/73
Gregg Aviation
7/21/73
Eastex Aviation
3/4/74
Eastex Aviation
3/5/74
Eastex Aviation
3/31/74
Eastex Aviation
7/29/74
Eastex Aviation
10/8/74
Eastex Aviation
Since the destinations of these flights were not proved, the substantiation requirements of section 274(d) have not been met, and expenditures for these 11 flights are not deductible. As for the 10 flights for which destinations have been proved in addition to date and amount, we next must decide whether petitioners have shown a business purpose for those flights. Petitioner's general testimony that he only flew for business purposes does not satisfy the requirement for specificity that is imposed by the statute, regulations, and case law. However, his testimony was very specific *508 about the business purpose for four trips, and that testimony proved the business purpose of those trips. Such trips are: (1) a trip to Beaumont on May 21, 1974, for quoting on work; (2) a trip to Midland-Odessa on May 10, 1974, for the same purpose; (3) the return trip from Midland-Odessa on May 10, 1974; and (4) a trip to Mena, Arkansas, on November 5, 1974 in connection with petitioner's work on a nursing home. As for the other six flights for which destination, date and amount have been proved, the notations by petitioner or his agent on receipts and the list of job invoices corroborate petitioner's vague testimony and prove the business purpose of four flights. Specifically, petitioners proved the following: (1) that the trip to Katy on February 17, 1974, was made in connection with work done for MacDee, Inc., on the Katy Nursing Home; (2) that the trip to Orange on February 19, 1974, was made in connection with work done for Firestone Rubber; (3) that the trip to Dallas on April 17, 1974, was made in connection with quotes on a sprinkling contract for the House of Antiques; and (4) that the trip to Cleburne on July 7, 1974, was made in connection with work done for MacDee, Inc. *509 , on the Cleburne Nursing Home. Petitioners failed to prove a business purpose for the two remaining flights for which the destination, date and amount had been proven. Those flights were made on March 2, 1973 and May 9, 1974, and went to El Paso and Houston, respectively. Thus, of the ten flights for which destinations, dates and amounts were proven, eight were also substantiated as to business purpose and represent deductible expenditures. Having completed our analysis of petitioner's air fares, we turn to the third category of expenditures for 1973 and 1974, expenditures for travel away from home except air fares. The remaining expenditures that petitioners seek to deduct as travel expenses were made for food, lodging, and auto transportation. Four of those expenditures are non-deductible because petitioners failed to prove either the date of the expenditure or the place where the expenditure was made or both. Specifically, petitioners failed to prove the following: (1) the date when petitioner rented an auto in Waco from Hertz Rent-A-Car; (2) the date when petitioner spent $24.88 at Tasty World and the location of Tasty World; (3) the date when petitioner spent $12.73 at *510 Tasty World and the location of Tasty World; and (4) the location of the Days Inn of America at which petitioner spent $38.16 on May 5, 1974. The remaining 12 expenditures have been substantiated as to date, place and amount, and they next must be examined for business purpose. Petitioner's vague testimony, by itself, is insufficient to prove the business purpose for any of the 12 expenditures. Other evidence, taken in conjunction with petitioner's vague testimony and the strong documentary evidence of the dates, amounts and places of the expenditures, proves a business purpose for 10 of the remaining 12 expenditures. Petitioner's expenditure of $30.78 for a Hertz rental car on May 21, 1974, in Beaumont related to his trip to that city for making quotes on work. The nine other qualifying expenditures were for food and lodging while petitioner was away from home, and in each case petitioner proved that such expenditures related to a job in a distant city.Petitioner's expenditure on December 16, 1972 (paid on January 25, 1973), at the Rodeway Inn of Bryan related to work done for MacDee Construction Co. on the Bryan Nursing Home. Petitioner's two expenditures dated February 17 and *511 19, 1973 at the Drummers Inn in Beeville, related to work done for R. W. McDonnell Construction. Petitionr's expenditure on June 11, 1973 at the Fountain Terrace Motel in Palacios related to work done for MacDee Construction Co. Petitioner's expenditure on July 14, 1973 at the Kings Quarters Inn in Mexia related to work done for MacDee Construction Co. in Wortham. Petitioner's expenditure on March 18, 1974 at the Merdi Gras Motel in Waco related to work done for MacDee, Inc., on the Robinson Nursing Home in Robinson. Petitioner's three expenditures on October 12 and 15, 1974 at the Ramada Inn in Fort Worth related to work done for MacDee, Inc., on the Haltom City Nursing Home in Haltom City. Petitioners failed to prove a business purpose for the expenditure of $18.02 at the Holiday Inn in Houston on June 8, 1973, and for the expenditure of $16.70 at Brennan's French Restaurant in Dallas on July 18, 1973. Thus, of the expenditures for travel away from home except air fares, ten items were fully substantiated by petitioners and are deductible, and six items were not properly substantiated and are not deductible. b. Amounts Paid in Cash
Of the deduction for travel expenses *512 claimed in 1973, $18,356 represents amounts allegedly paid in cash, substantiated by entries in petitioner's diary, and posted as a lump sum to the general ledger on December 31, 1973.No portion of this category was allowed by respondent as a deduction for travel expenses. Although $18,356 was posted from petitioner's diary to the travel account in the general ledger, the expenses noted in petitioner's diary total $29,937.26. Petitioners now claim that they are entitled to deduct the greater amount in full. Of the $29,937.26 of expenditures logged by the diary, petitioners contend that $9,043.87 represents travel expenses of petitioner and $20,893.39 represents payments by petitioner for meals which were consumed by his employees. Of the deduction for travel expenses claimed in 1974, $27,320 represents amounts allegedly paid in cash, substantiated by entries in petitioner's diary, and posted as a lump sum to the general ledger on December 31, 1974. No portion of this category was allowed by respondent as a deduction for travel expenses. Of the $27,320 of expenditures logged in the diary, petitioners contend that $10,181.81 represents travel expenses of petitioner and $17,138.19 *513 represents payments by petitioner for meals consumed by his employees. The expenditures which allegedly are substantiated by entries in petitioner's diaries fall into two categories: (1) expenditures for travel; and (2) expenditures for meals consumed by petitioner's employees and others. As noted in the legal discussion which precedes our analysis of amounts paid by check, travel expenses must be substantiated pursuant to section 274. The expenditures for meals consumed by petitioner's employees are not travel expenses and need not meet the rigorous substantiation requirements of section 274. Nevertheless, petitioner must prove that such expenditures were made, their amount, and that they were ordinary and necessary business expenses. Expenditures for meals of others are entertainment expenses and must be substantiated accordingly. See sec. 274. In attempting to provide the necessary proof to sustain the deductions in each category, petitioner introduced his diaries and testified generally about the expenditures and the diaries. The credibility and accuracy of petitioner's diaries is central to this aspect of the case. Unfortunately for petitioners, certain facts undermine *514 that credibility and accuracy. Petitioner readily admitted that he made no contemporaneous record of the locale where the expenditures were made. Instead, prior to trial, petitioner reconstructed his travel for 1973 and 1974 and noted in his diary on a week-by-week basis the cities that he had visited. This method of substantiation is itself suspect, and in this case it is also inaccurate. When compared to the receipts that petitioner received for other travel expenses, i.e., those receipts which were entered into evidence to prove the deductibility of travel expenses paid by check and posted monthly to the general ledger, and when compared to other documents received in evidence, inconsistencies between such sources and the diaries become apparent. [7] Clearly, the information contained on the receipts and other documents is to be believed, and petitioner's notations lose credibility. Also, we note that petitioner has not correlated the vicinity of his travel with his cash expenditures on a day-to-day basis. Expenditures are listed in the diaries for each day of the week, but petitioner does not list where he was on each day. Instead, petitioner has noted the locales that he *515 visited separately from the amounts expended. Thus, it is impossible to identify where petitioner was on any given day. One can only know that petitioner visited certain distant cities in the course of a week. As a result, one cannot distinguish the days on which petitioner was away from home from those on which he was not. The deductibility of meals, lodging, and other expenses of travel away from home is contingent upon a taxpayer being away from home. Petitioner's diaries do not identify the days on which petitioner was away from home. The accuracy of petitioner's notations *516 as to his whereabouts is suspect. Accordingly, petitioner's diaries do not support any deductions for the expenses of travel away from home. Having entirely disposed of the first category of cash expenditures, we turn to the second. With respect to petitioner's claimed travel expenses, we dwelled on one deficiency in petitioner's diaries: inaccuracy as to his daily whereabouts. However, the inconsistencies between entries in petitioner's diaries and documents submitted in evidence raise genuine doubt as to the overall credibility and accuracy of the diaries. In addition, the diaries provide no basis for us to make an allocation between amounts spent for employees' meals and amounts spent for the entertainment of non-employees. [8] Any amounts which may have been spent for the entertainment of non-employees are inadequately substantiated in the diaries. The foregoing factors combine to convince us that petitioners are not entitled to deduct any amounts spent for employees' meals or for the entertainment of non-employees. *517 As we noted at the outset of our discussion of this issue, petitioners bear the burden of proof in this proceeding. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners failed to carry that burden. The diaries kept by petitioner are incomplete. They do not prove the elements that they should. They lack the credibility and accuracy needed to support the claimed deductions. Nor did petitioners adduce enough additional proof to supplement the diaries and fill the gaps in their case. Petitioners are not entitled to deduct any part of the $29,937.26 recorded in the diary for 1973, nor are they entitled to deduct any part of the $27,320 recorded in the diary for 1974. 4. Negligence Penalty
Petitioners contend that they are not liable for additions to the tax under section 6653(a). Petitioners bear the burden of proof on this matter. Courtney v. Commissioner,28 T.C. 658 (1957). They have failed to carry that burden. The facts in the instant case provide us with a laundry list of record-keeping *518 and reporting errors which in combination cause us to conclude that imposition of the negligence penalty is proper. To cite just a few examples, petitioner claimed travel expense deductions which included the cost of meals eaten when petitioner was in the vicinity of Longview; petitioners claimed deductions for business gifts in respect of property which was purchased and consumed by petitioner; expenses incurred by petitioner's wife in renting a car and buying an airplane ticket to Las Vegas were deducted as business expenses of the Company; and sales of $5,393.35 were not recorded on the Company's books nor reported as income for the taxable year 1974. Nor may petitioners escape imposition of the penalty by claiming reliance on the advice of their accountant. Many of the errors were made knowingly by petitioners. For example, petitioner admitted that he had been briefed on the requirements for keeping records of his travel expenses in the course of a previous audit. Nevertheless, his diaries were incomplete and contained personal expenses. Petitioner kept no record of his gambling winnings, even though he admitted to coming back from Las Vegas with winnings on at least one *519 occasion. We feel obliged to include a postscript to this case. Petitioner impressed this Court as being a candid and honest man who has had impressive success as a businessman. His style can be described as nothing other than free-wheeling. As such, petitioner's attention to the niceties of tax law is scant. The overall picture, therefore, is that of a businessman who earned large sums of money, expended significant amounts on travel, meals for his men and business gifts, but for purposes of the Federal income tax laws kept deficient records of his expenditures and forgot many details of his expenditures. Unfortunately for petitioners, deductions are a matter of legislative grace, and one must meet the specific statutory requirements for any deduction claimed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Dowell v. United States,522 F.2d 708 (5th Cir. 1975), vacating 370 F.Supp. 69 (N.D. Tex. 1974), cert. denied 426 U.S. 920 (1976). Moreover, it is the burden of petitioners in this proceeding to prove their *520 entitlement to deductions in issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. One is not compelled to take advantage of the deductions provided by the Congress, but if one chooses to claim deductions, all statutory requirements prescribed by the Congress must be met. One must be able to prove specific facts through proper recordkeeping, where appropriate, or through full and accurate recollection. That is so even for those taxpayers who find their style cramped by such a burden. Thus, even though we are convinced that petitioners expended funds in circumstances that could give rise to allowable deductions which would be significant in amount, we are powerless to allow deductions in excess of the amounts allowed herein because petitioners did not produce sufficient evidence or testimony to fulfill the statutory requirements for the allowance of additional deductions. Decision will be entered under Rule 155.
Footnotes
1. Stephen B. Early appeared at trial and filed briefs for petitioner. Mr. Early withdrew as counsel of record on April 19, 1978.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. All locations mentioned herein are in Texas, unless otherwise indicated.↩
4. Petitioners concede that $5,393.35 of this amount should have been included as income. Respondent concedes that $700 of this amount was properly excluded by petitioners from their income. Thus, the amount of $4,023.69 in unexplained bank deposits is still at issue.↩
5. Petitioners' claim that $4,696.72 is deductible rather than $4,697.32 apparently stems from an arithmetical error by petitioners.↩
6. The $19.08 discrepancy between the amount claimed by petitioners and the amount shown by the submitted receipts is explained by petitioners' failure to notice a credit of $19.08 that was applied to one of the bills from an earlier payment of petitioner. Clearly, the full amount of the bill was paid, albeit that $19.08 of the bill was paid earlier than the remaining balance.↩
7. It seems appropriate to cite at least two examples. First, petitioner was in Beeville on February 17 and 19, 1973, according to receipts received in evidence. Petitioner's diary does not reflect his presence in Beeville, but rather shows that he was in Henderson, Shreveport, Lufkin or Hughes Springs, none of which are near Beeville. Second, petitioner was in Las Vagas on July 1, 1973, as evidenced by a check written and cashed in Las Vegas on that date. His diary shows business expenses for travel away from home on that date, and indicates that he was in Sulphur Springs at or near that date.↩
8. Petitioner testified that the amounts allegedly spent for feeding his employees also include amounts spent for feeing non-employees. Petitioner lumped both classes of expenditures under the heading "entertainment" in his diaries. Petitioners provided no method of determining how much was spent for each class of expenditure. Not enough substantiation was provided with respect to the expenditures for any of them to be deductible as expenses of entertainment. See sec. 1.274-5(b), Income Tax Regs.↩